UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| JOYCE TAYLOR,<br><br>    Plaintiff,<br><br>v.<br><br>SPRINGFIELD COLLEGE and SPRINGFIELD COLLEGE BOARD OF TRUSTEES,<br><br>    Defendants. | Civil Action No.:<br><br>Jury Trial Demanded |

## **COMPLAINT**

### I.    INTRODUCTION

1.    The Plaintiff, Dr. Joyce Taylor, was terminated after 20 years of employment from her position as a tenured faculty member at Springfield College (hereinafter, "the College") while she was recuperating from surgery related to colon cancer because the College refused to adjust its medical leave of absence policy allowing a maximum leave of six months as a reasonable accommodation for Plaintiff's disability.

2.    Plaintiff brings claims against Springfield College and the Springfield College Board of Trustees (collectively, "Defendants") for disability discrimination in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq.*, and the Massachusetts Anti-Discrimination Law, M.G.L. c. 151B, § 4(16).

3.    Defendants discriminated against Plaintiff by insisting upon a rigid application of a policy not grounded in any practical necessity and inconsistent with similar policies unrelated

1

to medical leave, rather than agreeing to reasonably modify the policy to accommodate Plaintiff's disability.

## II.     PARTIES

4. Plaintiff Dr. Joyce Taylor is an individual with a disability who was discriminated against by Defendants based on her disability. Plaintiff currently resides in Palm Coast, Florida, but at all times relevant to this action, she resided in Westborough, Massachusetts.

5. Defendant Springfield College is a 501(c)(3) nonprofit entity with its principal place of business in Springfield, Massachusetts. At all relevant times, Defendant was "a covered entity" within the meaning of 42 U.S.C. § 12111(2) and an "employer" pursuant to M.G.L. c. 151B, § 1(5).

6. Defendant Springfield College Board of Trustees is the primary governing body of the College, responsible for major decisions and changes on campus and oversight of institutional affairs, including approval of policies.

## III.     JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiff's federal law claims arising under Title I of the ADA, 42 U.S.C. § 12112, *et seq.* pursuant to 28 U.S.C. § 1331 and over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

9. Assignment to the Western Division is appropriate pursuant to Rule 40.1(d)(1)(C) of the Local Rules of the United States District Court for the District of Massachusetts because Defendants are located in this division and are the only parties residing within the District of Massachusetts.

10. Plaintiff exhausted administrative remedies by timely filing a charge with the Equal Employment Opportunity Commission ("EEOC") on December 3, 2020, which was within 300 days of the date when Plaintiff was first subjected to disability discrimination in employment. More than 180 days after filing her charge, EEOC had not yet issued a decision regarding Plaintiff's complaint, and Plaintiff requested a Notice of Right to Sue. The EEOC granted Plaintiff's request on May 25, 2022 and issued a 90 Day Right to Sue letter.

### IV.  FACTS

11. In 1999, Plaintiff was hired as an Adjunct Professor by Springfield College.

12. In 2010, Plaintiff became a full-time Assistant Professor in the Social Work Department. She earned tenure in 2017, and rose to the rank of Associate Professor in 2018. Defendants' Faculty Personnel Policy indicates that tenure shall only be granted to candidates who have: "exceeded the College standard in teaching and advising; met the College standard in scholarly, creative, and/or professional activity; met the College standard in service within and beyond the College; and whose prospects of continued professional advancement are reasonably assured."

13. Plaintiff was diagnosed with colorectal cancer in 2018 and underwent surgery to remove the cancerous tumor. She continued to teach a full course load throughout her recovery, using several sick days as necessary.

14. In the spring of 2019, Plaintiff's colorectal cancer returned. She waited until the summer to undergo radiation treatment so as to avoid interrupting her teaching schedule.

15. Plaintiff's doctors determined that she required chemotherapy treatment, and on September 1, 2019, Plaintiff began a leave of absence under the Family and Medical Leave Act ("FMLA"). Plaintiff's FMLA leave was set to end on November 22, 2019.

16. Upon learning that she would need additional major surgery in early 2020 to treat her cancer, Plaintiff submitted a request on November 4, 2019 for leave through February 28, 2020. The Certification of Healthcare Provider for Employee's Serious Health Condition form that Plaintiff submitted included a request that her doctor "Estimate the part-time or reduced work schedule the employee needs, if any" to which Plaintiff's doctor replied "TBD after 6 months," meaning after Plaintiff's leave from September 1, 2019 through February 28, 2020.

17. On November 19, 2019, the College approved a Personal Leave of Absence through February 28, 2020 via a letter to Plaintiff from Lea Bollenbach, HR Partner – Academic Affairs/Athletics.

18. The College's letter approving Plaintiff's Personal Leave of Absence through February 28, 2020 acknowledged that, at the conclusion of the leave, Plaintiff would be "reevaluated" by her doctor, and instructed Plaintiff to "[a]fter that appointment … submit new medical documentation to HR, substantiating the ongoing need for leave, or [her] planned return to work date with medical release." The letter went on to instruct Plaintiff that when she "resubmit[s] [her] healthcare provider's statement in February (or prior), [to] please make sure it includes information about [her] ongoing need for leave, medical diagnosis and probable duration of any requested extension."

19. The November 19, 2019 letter also requested that Plaintiff inform Defendants "*if*" her healthcare provider believed she could return to work for "*some part*" of the Spring 2020 semester. (Emphasis added.) Notably, the letter did not warn Plaintiff that she risked losing both her tenure and her position if she did not return for some part of the Spring 2020 semester. The letter did, however, place the decision making authority regarding "classroom and advisee coverage" squarely on the Department Chair and Dean.

4

20. In addition, the November 19, 2019 letter informed Plaintiff that Long Term Disability would be an option, subject to approval by the provider, "for medical related leaves that extend beyond a total of 180 days." It did not indicate that her inability to return within 180 days would result in her immediate termination.

21. In early 2020, the Dean of the School of Social Work informed Plaintiff that all course assignments for the spring 2020 semester had been assigned to adjunct faculty. The Dean encouraged her to focus on her health and recovery, and assured her that if she could not return until the Fall 2020 semester the Department would be able to continue to draw from the adjunct faculty pool as it had done in the past when other full-time faculty took leave.

22. Plaintiff underwent major surgery on January 23, 2020 to remove her rectum and surrounding lymph nodes, necessitating a total mesorectal excision.

23. Although her hospitalization was expected to last 4 to 7 days, Plaintiff remained in the hospital following her surgery for 18 days due to unforeseen complications. Plaintiff was discharged from the hospital on February 10, 2022.

24. While continuing her recovery at home, Plaintiff experienced intermittent high fevers and took narcotic pain medications to manage her ongoing pain.

25. On February 18, 2020, without prior notice as to the reason for the call, the College's Human Resources Director Jonathan Howell and Human Resources Partner Lea Bollenbach called Plaintiff to inform her that she was terminated from her employment effective March 1, 2020.

26. Despite her shock, Plaintiff managed to make a request for a reasonable accommodation by referencing the November 19, 2019 letter from the College that invited Plaintiff to request further extension of her leave beyond February 28 if medically necessary.

5

The Human Resources Director responded that he believed Plaintiff would not return to work because "people in [Plaintiff's] position who go out sick for so long on leave don't come back." He then suggested that Plaintiff apply for Long Term Disability.

27. The Human Resources Director continued to explain, for the first time, that Defendants had a policy of limiting employees' medical leave to six months, and that there would be no exceptions to this policy, despite Plaintiff's request for a reasonable accommodation to extend her leave.

28. Plaintiff, who still had accrued sick time to use and was also willing to take unpaid leave if necessary, attempted to explain her desire to return to work some time that Spring rather than apply for Long Term Disability, for which she felt she was ineligible due to her strong preference to return. She explained that she could work but the hour-plus drive to and from campus would be too difficult at that point in her recovery, but the Human Resource Director refused to engage in an interactive process with Plaintiff and stated that she would be terminated if she did not return in-person, full-time, on March 1, 2020.

29. The Human Resources Director alluded to Plaintiff's ability to "reapply" for her job the following Fall, but could not guarantee that she would be rehired and could not answer her questions about the effect on her tenure. Plaintiff inquired about the possibility of applying for Long Term Disability without being terminated and was told that was not possible.

30. Later on February 18, 2020, ten days before her approved leave of absence was set to expire, the College sent a letter to Plaintiff memorializing the conversation, reiterating Defendants' stringent six-month medical leave policy, and documenting that her "last day with the College will be recorded as March 1, 2020." She was offered COBRA coverage and the

ability to apply for Long Term Disability in the hope that the minor gesture "assists in some small way."

31. In contrast to its unalterable six-month medical leave policy, Defendants' Faculty Personnel Policy, which applies to "all full-time faculty regardless of rank, appointment, school, or campus location" permits faculty members to take a non-medical leave of absence without salary while continuing to hold faculty status and rank as a faculty member. The policy states that "[n]ormally, this period will be not less than one semester and will exceed one academic year only in exceptional cases."

32. On April 12, 2020, Plaintiff attempted to initiate a Faculty Grievance pursuant to the Faculty Personnel Policy, which prohibits discrimination based on disability, but was prevented from doing so by the Grievance Committee and Defendants' General Counsel.

## V. CLAIMS FOR RELIEF

### COUNT I
### Violation of Title I of the Americans with Disabilities Act
### (42 U.S.C. § 12111 *et seq.*)

33. Plaintiff incorporates by reference the allegations of each preceding and succeeding paragraph as if fully stated herein.

34. Plaintiff's medical condition described herein constitutes a disability within the meaning of the ADA. 42 U.S.C. § 12102(1).

35. With over two decades of teaching experience, Plaintiff is a "qualified individual" within the meaning of 42 U.S.C. § 12111(8) because she could perform the essential functions of the employment position that she held with or without reasonable accommodation.

36. Title I of the ADA provides, in pertinent part: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application

procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

37. Defendant Springfield College, governed by Defendant Springfield College Board of Trustees, is an employer engaged in an industry affecting commerce with 15 or more employees for each working day in each of 20 or more calendar weeks in the calendar year and is therefore a covered entity. 42 U.S.C. §§ 12111(2), (5)(A).

38. The ADA prohibits covered entities from "utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability" 42 U.S.C. § 12112(b)(5)(A).

39. The ADA prohibits covered entities from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

40. The ADA prohibits covered entities from "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(B).

41. Defendants' termination of Plaintiff, failure to make a reasonable accommodation to Plaintiff's known disability-based physical limitations, and failure to make any effort to engage in an interactive process to determine an appropriate accommodation, constitute unlawful discrimination under the ADA.

42. Defendants' use of a standard and method of administration which penalizes faculty who require a leave of absence due to a disability by automatically terminating them if they are unable to return by an arbitrary, unalterable deadline, while allowing significantly greater flexibility to faculty who take a leave of absence for non-disability related reasons, has the effect of discrimination on the basis of disability in violation of the ADA.

43. Plaintiff suffered damages as a result of Defendants' unlawful acts, including lost wages, lost health and other benefits of employment with tenure, emotional distress, and the cost of bringing this lawsuit.

44. By terminating Plaintiff and stripping her of tenure after two decades of employment while she was recuperating from surgery and treatment related to her life-threatening cancer, Defendants intentionally discriminated against her, with malice or reckless indifference to her federally protected rights.

## COUNT II
### Violation of Section 504 of the Rehabilitation Act of 1973
### (29 U.S.C. § 794 *et seq.*)

45. Plaintiff incorporates by reference the allegations of each preceding and succeeding paragraph as if fully stated herein.

46. Section 504 of the Rehabilitation Act of 1973 ("Section 504") provides in pertinent part:

> "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

29 U.S.C. § 794(a).

47. Springfield College is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504, and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

48. The Rehabilitation Act defines "program or activity" to "mean[] all of the operations of . . . a college, university, or other postsecondary institution." 29 U.S.C. § 794(b)(2)(A); 34 C.F.R. § 104.3(k). Springfield College is a "college, university, or other postsecondary institution." 29 U.S.C. § 794(b)(2)(A); 34 C.F.R. § 104.3(k).

49. Section 504 prohibits discrimination in employment on the basis of disability by any covered program or activity. 34 C.F.R. § 104.11(a)(1). Discrimination on the basis of disability is unlawful with respect to termination (34 C.F.R. § 104.11(b)(2)), leaves of absence (34 C.F.R. § 104.11(b)(5)), and any other term, condition, or privilege of employment (34 C.F.R. § 104.11(b)(9)).

50. All decisions concerning employment made by a covered entity must be made in a manner which ensures that discrimination on the basis of disability does not occur. 34 C.F.R. § 104.11(a)(3).

51. Covered entities must make reasonable accommodations to the known physical limitations of an otherwise qualified employee with a disability unless the accommodation would impose an undue hardship on the operation of its program or activity. 34 C.F.R. § 104.12(a).

52. Plaintiff's medical condition described herein constitutes a disability within the meaning of Section 504. 29 U.S.C. § 705(20).

53. The standards used to determine a violation of Section 504 with respect to employment discrimination are the same as those used to determine a violation of Title I of the ADA. 29 U.S.C. § 794(d).

54. Defendants' termination of Plaintiff, failure to make a reasonable accommodation to the known physical limitations of Plaintiff's disability, and failure to make any effort to engage in an interactive process to determine an appropriate accommodation, amount to discrimination in violation of Section 504 of the Rehabilitation Act of 1973.

55. Plaintiff suffered damages as a result of Defendants' discrimination, including lost wages, lost health and other benefits of employment with tenure, and the cost of bringing this lawsuit.

## COUNT III
### Violation of the of the Massachusetts Anti-Discrimination Law
### (M.G.L. c. 151B)

56. Plaintiff incorporates by reference the allegations of each preceding and succeeding paragraph as if fully stated herein.

57. Plaintiff is a "qualified handicapped person" within the meaning of the Massachusetts Anti-Discrimination Law. *See* M.G.L. c. 151B, § 1(16).

58. Defendant Springfield College, governed by Defendant Springfield College Board of Trustees, is an employer as defined in M.G.L. c. 151B, § 1(5).

59. M.G.L. c. 151B, § 4(16) makes it an unlawful practice to "dismiss from employment … or otherwise discriminate against" a qualified handicapped person because of her handicap.

60. Defendants violated M.G.L. c. 151B, § 4(16) in terminating Plaintiff, failing to provide a reasonable accommodation to Plaintiff, and failing to engage in an interactive process with Plaintiff to determine an appropriate accommodation.

61. Plaintiff suffered damages as a result of Defendants' unlawful acts, including lost wages, lost health and other benefits of employment with tenure, emotional distress, and the cost of bringing this lawsuit.

62. By terminating Plaintiff and stripping her of tenure after two decades of employment while she was recuperating from surgery and treatment related to her life-threatening cancer, Defendants acted in an outrageous and egregious manner, with knowledge or reckless disregard to the fact that its discriminatory conduct would likely cause serious harm to Plaintiff.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court:

a. Declare that Defendants, by the actions, practices, and procedures described above, violated Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); and M.G.L. c. 151B, § 4(16).

b. Award Plaintiff lost wages and the value of other benefits of service and tenure she would have received or have been entitled to receive since her termination on March 1, 2020.

c. Award Plaintiff compensatory damages, including emotional distress;

d. Award Plaintiff punitive damages;

e. Award Plaintiff reasonable attorneys' fees and costs; and

f. Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

PLAINTIFF JOYCE TAYLOR

By her attorneys,

Dated: July 18, 2022

*/s/* Thomas P. Murphy
Thomas P. Murphy, BBO # 630527
tmurphy@dlc-ma.org
Tatum A. Pritchard, BBO # 664502
tpritchard@dlc-ma.org
Ginger Gates, BBO # 707208
Ggates@dlc-ma.org
Disability Law Center, Inc.
11 Beacon St., Suite 925
Boston, MA 02108
617-723-8455